IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEBRA ANN SMITH,

      Plaintiff,

v.                                                              CV 15-970 JCH/WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Debra Smith filed for a period of disability and disability insurance on June 23, 2012, based on fibromyalgia, rheumatoid arthritis, stroke, anxiety/depression, a back injury, sleep apnea, and chronic shingles. (Administrative Record "AR" 60-61, 139.) After her application was denied at all administrative levels, she brought this proceeding for judicial review. The case is before me now on Smith's Motion to Reverse and Remand Administrative Agency Decision (Doc. 22), a response filed by the Commissioner of the Social Security Administration ("SSA") (Doc. 29), and Smith's reply (Doc. 30). For the reasons explained below, I recommend that the Court grant Smith's motion and remand this case to the SSA for further proceedings consistent with this Proposed Findings and Recommended Disposition ("PFRD").

**STANDARD OF REVIEW**

When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the

correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 404.1520(a)(4) (2015). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 404.1520(a)(4) & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work

in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. § 404.1520(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy.[1] *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Smith is a fifty-two-year-old woman with a college education. (AR 61, 139, 191, 326.) She previously worked as a case manager and community support worker in mental health, and in medical billing. (AR 176-80.) Smith alleges disability beginning on October 20, 2011, based fibromyalgia, rheumatoid arthritis, stroke, anxiety/depression, a back injury, sleep apnea, and chronic shingles. (AR 61.)

I do not address all of the medical evidence of record, but rather target my factual discussion to those matters relevant to the disposition of this case.

Herbert Ojiaku, M.D., was Smith's treating physician for all relevant periods. Many of the early records from Dr. Ojiaku, a physician at Mesa Medical Services, are handwritten and

---

[1] The ALJ in this case incorrectly stated that "the claimant generally continues to have the burden of proving disability at this step, [although] a limited burden of going forward with the evidence shifts to the [SSA]," however, she correctly concluded that "[i]n order to support a finding that an individual is not disabled at this step, the [SSA] is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do . . . ." (AR 13.)

3

difficult to discern. Nonetheless, it is clear that Smith complained of nerve pain beginning at least in January 2011 (AR 300), and was diagnosed with rheumatoid arthritis no later than February 1, 2011 (AR 299). Smith went to the hospital on October 25, 2011, complaining of stroke symptoms and had a CT scan of the head that was unremarkable, though the clinician recommended an MRI. (AR 276, 308.) Smith had the MRI on November 2, 2011, which revealed "[f]indings in keeping with a cortical ribbon infarct in the left frontal lobe posteriorly." (AR 275.) On November 4, 2011, Dr. Ojiaku ordered physical and occupational therapy and noted that Smith's symptoms persisted. (AR 292.) Dr. Ojiaku referred Smith to a neurologist. (AR 291.)

Dr. Ojiaku wrote a "To Whom It May Concern" letter on December 2, 2011, and stated that he had been Smith's physician for several years, had diagnosed Smith with rheumatoid arthritis, hypothyroidism, anxiety, and gasteroesophageal reflux disease, and that she had developed a stroke in October 2011 with memory loss and left-sided weakness that all combine to make it difficult for her to function normally. (AR 306.)

Smith saw Jeffrey Paul Nelson, M.D., a neurologist, on January 25, 2012. (AR 314.) Dr. Nelson noted that Smith had an abnormal MRI, but that the abnormality appeared to be on the wrong side, given her symptoms. (*Id.*) Smith reported difficulty concentrating and widespread, intermittent pain. (*Id.*) Dr. Nelson assessed Smith with fibromyalgia with cognitive impairment. (*Id.*) Smith followed-up with Dr. Nelson on April 25, 2012, and he assessed her with fibromyalgia, obstructive sleep apnea, and a brain mass or abnormality. (AR 317.) Dr. Nelson ordered a follow-up MRI, which Smith had on April 30, 2012. (AR 311.) The follow-up MRI revealed small, chronic, lacunar infarcts in the medial temporal lobes, larger on the left side of her brain. (*Id.*)

Marty Lee Schmidt, M.D., conducted a consultative examination of Smith on August 18, 2012. (AR 322.) Dr. Schmidt noted that Smith was diagnosed with rheumatoid arthritis in 2007 by a rheumatologist. (*Id.*) Dr. Schmidt assessed Smith with depression, anxiety, fibromyalgia, a back injury, rheumatoid arthritis—though she seemed to have good function in all of her joints at that time, and a stroke—though she did not appear to have major brain damage. (*Id.*)

On September 18, 2013, Smith reported to the emergency room with expressive aphasia. (AR 406.) She was transferred to a hospital in Lubbock, Texas, where she was diagnosed with a myocardial infarction (heart attack), hypertension, dyslipidemia, stroke syndrome, anxiety, rheumatoid arthritis, a cerebrovascular accident, and post-stroke aphasia. (AR 387.) Smith was later diagnosed with a mitral valve prolapse. (*See* AR 368-72.)

Smith had speech and physical therapy after her stroke in 2013. (AR 441-68.)

## THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued her decision on June 23, 2015. (AR 21.) Preliminarily, the ALJ determined that Smith meets the insured status requirements for disability insurance through March 31, 2018. (AR 13.) At step one, the ALJ determined that Smith has worked since her alleged onset date of October 20, 2011, but has not engaged in substantial gainful activity. (*Id.*) At step two, the ALJ found that Smith has the severe impairments of "history of cerebrovascular accident ("CVA"); fibromyalgia; mitral valve prolapse, status-post myocardial infarction; obesity; obstructive sleep apnea; plantar fasciitis; mood disorder; adjustment disorder; anxiety disorder; personality disorder; and neurotic disorder." (*Id.*) The ALJ also found that Smith has the non-severe impairments of gastroesophageal reflux disease, commonly known as GERD, and hypothyroidism. (*Id.*) The ALJ concluded that Smith does not have an impairment or combination of impairments that meet or medically equal anything on the Listing of

Impairments. (AR 14.) The ALJ specifically considered Listings 1.02, 1.02A, 3.09, 3.10, 11.04, 12.02, 12.04, 12.06, 12.08, 14.02, 14.06, and 14.09, and noted that Smith has experienced no episodes of decompensation and experiences mild restrictions in activities of daily living, mild difficulties with social functioning, and moderate difficulties with regard to concentration, persistence or pace. (AR 14-15.)

At phase one of step four, the ALJ determined that Smith has the RFC for light work, except that she must avoid hazards; can perform simple and some detailed tasks, but not complex tasks; and can occasionally kneel, crouch or crawl. (AR 16.)

The ALJ summarized Smith's hearing testimony and found that Smith's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (AR 16-17.) The ALJ then summarized the record, including the opinion of treating physician Dr. Ojiaku. The ALJ stated that "there is good reason to reject [Dr. Ojiaku's] opinion, and I have provided it little weight." (AR 18.) The ALJ found that Dr. Ojiaku's "To Whom It May Concern" letter "provided nothing more than a conclusory statement as to disability and provided an assessment directly contradictory to the medical evidence considered as a whole," which meant that his opinion was not entitled to controlling weight. (*Id.*) Further, the ALJ found that Dr. Ojiaku's opinion was "inconsistent with his physical examination," specifically because Dr. Ojiaku diagnosed Smith with rheumatoid arthritis, even though her January 9, 2013, physical examination "revealed [Smith's] musculoskeletal examination was normal, her back examination was normal, and she was neurovascularly intact." (*Id.*) The ALJ also cited that Smith "had full strength and no neurological deficits" at the consultative examination in August 2012, and has not had treatment for residual weakness resulting from her strokes since November 2013. (*Id.*) Finally, the ALJ noted that Smith "testified she does not require heart surgery." (*Id.*)

6

In summarizing the consultative examination that Dr. Schmidt performed in August 2012, the ALJ noted that Dr. Schmidt diagnosed Smith with "sleep apnea, rheumatoid arthritis with good function of all joints, stroke with no major brain damage, fibromyalgia with no pain today, depression, and anxiety." (AR 17.)

Additionally, the ALJ gave "great weight to the State agency's findings that [Smith] can perform a range of light work," but discounted other portions of those opinions. (AR 19.)

At phases two and three of step four, the ALJ found that Smith could perform her past relevant work in medical billing, which is sedentary in exertional demand and semi-skilled, with a special vocational preparation score of 3, because it does not require the performance of work-related activities precluded by the RFC. (*Id.*) The ALJ found that Smith could perform this work as she actually performed it and as it is generally performed. (*Id.*)

Alternatively, the ALJ also found that Smith could perform other jobs existing in the national economy, including an answering service operater, which is sedentary in exertional demand and semi-skilled, with a special vocational preparation score of 3; a marker, which is light in exertional demand and unskilled, with a special vocational preparation score of 2; or a mail clerk, which is light in exertional demand and unskilled, with a special vocational preparation score of 2. (AR 20-21.)

Based on her findings at steps four and five, the ALJ determined that Smith has not been under a disability as defined by the Social Security Act. (AR 21.)

## DISCUSSION

Smith argues that the ALJ erred by improperly rejecting the opinion of her treating physician, failing to properly weigh the evidence when crafting the RFC, failing to develop the record, failing to consider her abilities in all areas of functioning, failing to support the RFC with

7

substantial evidence, failing to perform a complete analysis of Smith's past relevant work functions and compare those functions with her RFC, and by accepting inconsistencies between the testimony of the vocational expert, the record, and the Dictionary of Occupation Titles. The Commissioner, of course, disagrees. Because I agree that the ALJ improperly rejected the opinion of a treating physician, and recommend that the Court remand this case on that basis, I do not reach Smith's other claims of error.

When confronted with the opinion of a treating physician, an ALJ must complete a sequential two-step process for evaluating that opinion. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must decide whether a treating doctor's opinion commands controlling weight. *Id.* A treating doctor's opinion must be accorded controlling weight "if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying Social Security Ruling ("SSR") 96-2p, 1996 WL 374180, at *2 (July 2, 1996)).[2] If a treating doctor's opinion does not meet this standard, the opinion is still entitled to deference to some extent as determined under the second step of the process. *Id.* In this second step, the ALJ must determine the weight to accord the treating physician by analyzing the treating doctor's opinion against the several factors provided in 20 C.F.R. § 404.1527(c) and must "give good reasons, tied to the factors specified . . ., for the weight assigned." *Id.*

Here, there is no dispute that Dr. Ojiaku was Smith's treating physician. The ALJ stated that Dr. Ojiaku "provided nothing more than a conclusory statement as to disability and provided

---

[2] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

an assessment directly contradictory to the medical evidence considered as a whole," which meant that his opinion was not entitled to controlling weight. (AR 18.) As support for this, the ALJ stated that Dr. Ojiaku's opinion—that Smith had been under his care for three years for rheumatoid arthritis, hypothyroidism, anxiety, and GERD, and that she developed a stroke in October 2011 that caused memory loss and left-sided weakness, all of which made it more difficult for her to function normally—was inconsistent with his physical examinations. (*Id.*) Specifically, the ALJ noted that Dr. Ojiaku consistently diagnosed Smith with rheumatoid arthritis, even though a physical examination on January 9, 2013, revealed that her "musculoskeleteal examination was normal, her back examination was normal, and she was neurovascularly intact." (*Id.*)

The Commissioner argues that Dr. Ojiaku's physical findings were often normal, and therefore supports the ALJ's conclusion. (Doc. 29 at 12-13.) The ALJ, however, cited specifically to Dr. Ojiaku's diagnosis of rheumatoid arthritis and the January 2013 physical examination. (AR 18.)

The ALJ did not address that Dr. Schmidt, whose opinion the ALJ did not give a specified weight, diagnosed Smith with rheumatoid arthritis and fibromyalgia in August 2012. (AR 324.) Nor did she address that Dr. Nelson, the neurologist, diagnosed Smith with fibromyalgia with cognitive impairment in January 2012 (AR 314) and again in April 2012 (AR 317).

When considering the evidence, it is unclear that the ALJ's decision not to accord Dr. Ojiaku's opinion controlling weight was supported by substantial evidence.

Even if the ALJ's decision not to accord Dr. Ojiaku's opinion controlling weight was supported by substantial evidence, the ALJ was still required to apply the factors in 20 C.F.R.

9

§ 404.1527(c) in order to determine how much weight to give the opinion. These factors include 1) the examining relationship; 2) the treatment relationship, including length, frequency, and nature of the relationship; 3) supportability of the opinion with medical evidence; 4) consistency of the opinion with the record as a whole; 5) specialization of the physician; and 6) other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c). While the Commissioner is correct that the ALJ is not required to discuss every factor in every case, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the ALJ is required to consider every factor.

Here, the ALJ appears to have impermissibly cherry-picked from the medical evidence of record. *See Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007) (holding that the ALJ erred by accepting some of the moderate limitations advanced by a nonexamining physician, but rejecting others without explanation). Given that a consulting physician and a treating physician agreed with Dr. Ojiaku's diagnoses, and that the ALJ appears to have overlooked or ignored this consistency in the record, I cannot say that the ALJ provided "good reasons" for rejecting Dr. Ojiaku's opinion. The diagnoses of Drs. Schmidt and Nelson go directly to factors 3, 4, and 5 of the regulations. The ALJ cannot ignore this evidence when evaluating Dr. Ojiaku's opinion.

I recommend that the Court conclude that the ALJ committed legal error when evaluating the opinion of treating physician Dr. Ojiaku by either failing to support with substantial evidence her decision not to accord Dr. Ojiaku's opinion controlling, or by failing to provide good reasons for rejecting Dr. Ojiaku's opinion in light of the consistent evidence from Drs. Schmidt and Nelson. Accordingly, I recommend that the Court remand this case to the SSA for proper evaluation of Dr. Ojiaku's opinion.

## CONCLUSION

I recommend that the Court find that the ALJ committed legal error at the RFC stage by failing to appropriately assess the opinion of Dr. Ojiaku in accordance with *Krauser* and 20 C.F.R. § 404.1527(c). I recommend that the Court remand this case for proceedings consistent with this PFRD and direct the ALJ to appropriately evaluate the opinion of Dr. Ojiaku and provide good reasons for rejecting any portion of his opinion.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.